MISSISSIPPI STATE HIGHWAY COMMISSION *v.* HUDGINS *et al.*

(Division A. June 6, 1938.)

[181 So. 719. No. 33264.]

Russell Wright, Assistant Attorney-General, for appellant.

**Chaney & Culkin** and **R. M. Kelly,** all of Vicksburg, for appellees.

Argued orally by **Russell Wright** for appellant and by **John Culkin** for appellee.

**McGehee, J.,** delivered the opinion of the court.

Mrs. Eula M. T. Hudgins, one of the appellees, was the owner of three lots or parcels of land, comprising a single tract, situated in the town or village of Waltersville, about two miles north of the City of Vicksburg, and which tract of land had a frontage of approximately 200 feet on U. S. Highway 61, and extended back to the property of the Vicksburg National Cemetery. The appellant, Mississippi State Highway Commission, desiring to use a portion of the land for the purpose of straightening out a curve in said highway, filed its petition in the county court of Warren County to condemn the part of the land needed, consisting of a strip approximately 30 feet wide at the south property line and 78 feet wide at the north line, extending across the front end of the three lots. On the part thus sought to be condemned, there were several buildings, including a wood and frame construction store building with a brick veneer front (used by appellee as a residence, grocery store, restaurant, dining rooms, soft drink stand, meat market, and dance hall),

a filling station, and tourist camp. The source of water supply for these buildings was a spring located on that portion of the land not to be taken in the condemnation proceeding, and on which said portion some of the tourist camp houses were stationed. From the rear end of the three lots, and extending to the part condemned, there was a steep hillside, which is shown to be of no value, after the level portion of the lots was taken for highway purposes. The petitioner took possession of the part condemned, and dismantled the buildings located thereon.

Upon the trial of the cause in the county court a judgment was rendered in favor of the owner for $18,500, which was affirmed in the circuit court on the record, there being no request there made for a trial de novo. Upon the overruling of a motion for a new trial, the petitioner appeals, assigning as error the excessiveness of the verdict, and the admission of incompetent evidence, etc.

The proof discloses that during the early part of the year 1935 and 1936, the owner, together with her husband, executed an option on all of the lots and buildings, in favor of the United States Government, for use as additional National Cemetery grounds, at the price of $10,500, based on an estimate of the replacement cost of the buildings and of a concrete reservoir at the spring, and which estimate was made by two representatives of the government in the sum of $11,698; that a witness for appellee, shortly before the trial, made an estimate of the replacement cost of the buildings and of the concrete reservoir at the sum of $12,072.18, with a view of bidding on the work of their replacement should the occasion arise; that this witness valued all of the lots at $3,000, the spring left on the hillside at $3,000, and was permitted to testify, over the objection of the petitioner, to a total value of the property taken, and the spring, in the sum of $18,000, without making any allowance for depreciation of the buildings or stating what the allowance for

depreciation should be. Another witness, a fire insurance agent, testified to a replacement cost of $12,000 as a basis for his opinion of the value of the property taken, but failed to qualify as a witness as to land values in that locality, and stated that in estimating the value of buildings for insurance purposes, he considered only replacement cost. Another was of the opinion that the property taken could, within a reasonable course of time, depending on economic conditions, be sold for $17,500, explaining that he meant within a year, depending on economic conditions; and other testimony was given, over the objection of the petitioner, to the effect that it would require the removal of approximately 8,000 yards of dirt at a cost of $5,000 to excavate enough of the hillside to provide a place for the replacement of the buildings.

In passing on the objection to the testimony in regard to the replacement cost, the court stated that the testimony was admitted to assist the jury in arriving at the present market value of the property, ''and for that reason alone.'' The record shows, however, that this statement was made by the county judge out of the hearing of the jury; and while the jury was properly advised in the written instructions as to the proper rule for the ascertainment of the damages, it is manifest that the full replacement cost was allowed by the jury as an item of damages in arriving at its verdict, since the amount awarded cannot be sustained on any other theory. Some of the buildings were shown to be ten years old, of frame construction and of composition roofing, and it appears that no depreciation was allowed on account thereof. Moreover, the amount of the award shows that a value of $3,000 for the spring, testified to by one of the witnesses, was evidently accepted by the jury as correct in arriving at a total verdict of $18,500. The drinking water used on the premises did not come from this spring; and it is not reasonable to suppose that a source of water supply for general purposes in the buildings so near the Mis-

sissippi river, where wells are obtainable, has such a value as there contended for by the witness. Then, too, it is not proper, after awarding full damages for the property taken, to then allow additional compensation for those things without which it would have had no value. It is true that the spring may be of no further use to the owner, but it is not possible to determine and fix the value of the buildings without taking into consideration that they are piped to some available water supply, and the value of these advantages should not be duplicated in estimating damages.

While there is authority for the admission of testimony in regard to the replacement cost of improvements on the land taken in an eminent domain proceeding, so as to assist the jury in determining the value of the improvements taken, such cost cannot be taken as fixing the present value thereof without regard to depreciation.

Other errors are assigned; but in view of the conclusion that we have reached it is unnecessary that they be discussed.

Unless a remittitur of $3,500 shall be entered, the judgment will be reversed. If such remittitur be entered, the case will stand affirmed.

Affirmed with remittitur.