MISSISSIPPI STATE HIGHWAY COMMISSION *v.* SMITH *et al.*

(Division B. Dec. 11, 1939. Suggestion of Error Overruled Feb. 5, 1940.)

[192 So. 448. No. 33920.]

614

**E. R. Holmes, Jr.**, Assistant Attorney-General, for appellant.

**Hathorn & Williams,** of Poplarville, for appellees.

**McGehee, J.**, delivered the opinion of the court.

The appellant filed this proceeding in a special court of eminent domain, where the trial resulted in a verdict for $1,800 in favor of the appellees, who were the owners of the property taken. Contending that the verdict was excessive, the petitioner appealed to the Circuit Court, where the case was tried de novo, and a verdict rendered for the sum of $400. From a judgment based upon that verdict the owners of the land in question then appealed the case to this court, on the ground that the amount of damages allowed them was grossly inadequate,

and that the verdict therefor had been influenced by an erroneous instruction given in behalf of the petitioner. The decision on that appeal is reported in 183 Miss. 741, 184 So. 814, and the description of the property taken, the nature of the improvements involved, and the location of the premises from which the strip was taken for highway purposes, are set forth in the opinion with such clarity as to render it unnecessary to again recite those facts here. The Court expressed the view therein that the evidence, which showed that the damage ranged from $175 to approximately $2,000, would have justified a verdict in a somewhat larger amount than $400, but declined to reverse the case on the ground of inadequacy. However, the instruction complained of was held to be erroneous, and the case was reversed and remanded on the ground that the error may have been influential with the jury, in fixing the amount of the verdict.

Upon remand the case was again tried, and the owners of the property, who are now the appellees here, recovered a judgment for the sum of $3,000, an amount much in excess of the highest estimate made by the witnesses, on the former trial, as to the damages.

Aside from that part of the tract measuring 350 feet north and south, by 127 feet east and west, facing highway No. 11, on which all of the improvements except the barn were situated, the remainder of appellee's premises consisted of a tract nearly 500 feet wide facing said highway, by a depth of nearly 1000 feet therefrom. The north end of the strip taken for highway purposes, as described in the opinion on the former appeal, therefore lies in front of this larger tract of farm land. Hence the damage caused by the taking lies chiefly in the fact that the improvements were left on a strip only 104 feet in depth facing the highway, by 350 feet in length; whereas, the strip was formerly 127 feet in depth, by 350 feet, thus leaving a front yard of only 9 feet from the new line of the highway to appellees' houses, store, etc., as

compared with approximately 35 feet before the taking; and also in the fact that all of these improvements are rendered much more inaccessible to the highway than formerly.

The paved portion of the new highway is shown to be located on the traveled portion of the old highway, and therefore at the same distance from the improvements as before the taking of the strip in question for the purpose merely of widening and grading the right of way.

The appellee D. L. Smith testified that the land actually taken was worth $150. He considered that the five shade trees standing on this strip of land, but which now belong to the appellant, are worth $50 to $75 each; that the cost of moving a fence would be $50 to $75; and that the cost of removing and replacing the filling station, which is small, and of frame construction, would amount to $50 or $75. The other improvements were all left intact on the land not taken, but the value of this remaining property, and especially the part on which the improvements were situated, was substantially reduced because of there being no longer sufficient space left in front of his house for a front yard, and in front of the store building outside of the right of way.

He further testified that it would be necessary that he move these improvements back, for the reasons above stated, and because of their present inaccessibility; and that this would cost from $2,500 to $2,800. It does not appear whether or not he would be able to acquire at a reasonable cost additional land off of the vacant tract immediately behind the narrow strip on which the improvements are located, but we assume that he was estimating the cost of moving the buildings on the other part of the land which appellees already own. He had caused a building contractor to estimate such cost, and the contractor testified that it would amount to $2,979 for moving them as far back as they were from his front line before the taking. All of this testimony was objected to on the ground that the cost of moving

the buildings was not the proper measure of damages. The contractor gave no opinion as to the value of the property before the strip was taken for highway purposes, as compared with its value thereafter, and we understand the testimony of the appellee Smith, when considered as a whole, to mean that he was including the cost of moving the buildings in his estimate of the damages sustained. The fact that certain changes in the premises, and in the re-location of improvements, within reasonable limitations, is rendered necessary, may be considered as a circumstance in arriving at the damages sustained in such cases, but the cost thereof should not constitute the measure of damages, since it may frequently happen that such cost might exceed the value of the entire property before the taking of the part for public use.

Moreover, the amount of the verdict rendered on the last trial, as compared with the former verdicts, would indicate that the jury likewise used the cost of moving the buildings as the criterion for measuring the damages, instead of the value of the property in its present condition, as compared with its value before the taking.

Instead of requiring a remittitur to be entered, since we are not advised as to what would be adequate compensation in this case, the Court has concluded that there should be a reversal and remand, in order that the witnesses, instead of merely stating their opinion as to the percentage of depreciation alone in the property by reason of the taking, may give the jury their idea of the value in terms of money before the taking, as compared with such value thereafter, having first qualified for that purpose; and also in order that a jury may be furnished more definite data upon which to arrive at the difference in value of the property before the taking, as compared with its value in its present condition; without an invitation being given, such as is strongly presented by the evidence contained in this record to ac-

cept the cost of moving the improvements, as a criterion by which to measure the damages to be allowed.

Also, in order to emphasize the rule announced in former decisions, and which we think should be more strictly adhered to because of its wholesomeness in purpose and consequences, we hold that the announcement to the Court by one of the attorneys for the appellee in the opening statement of the case to the jury, that he desired to serve notice on opposing counsel that a motion would later be made for the jury to view the premises in question, came within the rule against the actual making of such a motion in the presence of the jury. Counsel are in disagreement as to whether the counsel on whom the notice was served then objected to the announcement in the presence of the jury before the court ordered it to retire, and the ruling by the court which permitted counsel to withdraw the statement upon the jury's return, on the theory that the error would thereby be cured, fails to disclose whether or not opposing counsel had found it necessary to object before the court ordered the jury to retire. Any harm that may have been occasioned by the occurrence may be avoided on a retrial of the case.

Reversed and remanded.